| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Rachid Chakir, et al., | § § § § § § § § § § | |
| Plaintiffs, | | |
| versus | | Civil Action H-10-2850 |
| BA Research International, LP, et al., | | |
| Defendants. | | |

## Opinion on Summary Judgment

1. *Introduction.*

A group of chemists have sued their employer for overtime wages. They were paid properly.

2. *Background.*

Rachid Chakir and the six other plaintiffs – David Graham, Christopher Harrison, Tanya Kalis, Charlene Reed, Albert Nguyen, Ikenna Ofoma – were extraction chemists for BA Research International. Many of Research's clients are pharmaceutical companies. Extraction chemists, like the plaintiffs, analyze the amount of pharmaceutical compounds in biological fluids. The drug companies use Research's analyses with the Food & Drug Administration.

The chemists were paid a salary. From 2007 to 2009, their salaries ranged from $26,000 to $49,000 per year. They were paid twice a month and the normal workweek was Monday through Friday, 8:00 or 8:30 a.m. to 5:00 or 5:30 p.m., with an hour off for lunch. The expected productivity was either (a) two protein precipitations or (b) one liquid-to-liquid or solid-phase extraction in a day. Regardless of the number of hours worked, the chemists received a guaranteed, fixed wage each pay period.

In 2003, Harrison asked Research for opportunities to earn more money by doing additional extractions. The company agreed that chemists who completed more than two precipitations or one extraction in a single day would be paid additional money for each extra

extraction. For each additional extraction, Research paid a fixed amount, regardless of the hours spent completing it.

This premium pay was the equivalent of a hypothetical four hours of the employee's base salary. Research computed it by dividing a worker's annual salary by 2,080 hours of work – 40 hours per week times 52 weeks – the hours of a customary work year. By doing multiple extractions at the same time, some chemists increased their incomes dramatically. Harrison, for example, could do five runs at once. At times, he worked a 13-hour day but was paid the equivalent of 28 or more imputed hours for that day.

Research did not require additional extractions. Some chemists continued to work their normal schedule of two-a-day for just their base salary. These chemists may have worked more or fewer than 40 hours a week.

In 2009, an investigation of Research's laboratory practices showed hundreds of discrepancies in the documentation of some of its experiments. For example, some chemists had recorded having done extractions on dates and times when the computer showed them not to have been in the laboratory. As a result, Research fired seven chemists in July of 2009. Six of the seven whom it terminated are plaintiffs here. Harrison was not terminated because he had resigned that March.

Initially, the seven plaintiffs also sued Research for having discriminated against them for their national origin – Americans. The facts for that claim were simply that Research is a subsidiary of a Canadian company and the officer who fired them was a Canadian. A glance at the plaintiffs' surnames show that the promise of America is real. The law does not recognize a claim that one was mistreated because of his Americanness.

After realizing they had improvidently sued all defendants except Research the plaintiffs agreed to their dismissal.

3.  *Salary.*

Research says the chemists were learned professionals who are not covered by the law's overtime requirements.[1] Exempt professionals are people (a) compensated by salary or fee at a rate of $455 per week or more, and (b) whose work requires advanced knowledge of science

---

[1] 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.0(a).

or other technical or intellectual learning.[2] The chemists agree that their duties are those of a learned professional.

An employee is salaried if he receives a predetermined amount that does not change when the quality or quantity of the employee's work changes within a 40-hour week.[3]

Despite knowing they are were paid a base salary, the chemists say that they were not really paid a salary but, rather, were paid by the hour. Their insistence that they were paid by the hour is a pretense unsupported by anything but argument. The records they have regularly been receiving make it absolute that Research paid them a salary of more than $455 per week and that they knew they were being paid a fixed, base salary regardless of the number of hours worked.

When deposed, every plaintiff testified that he was paid a salary. Kalis, for instance, testified that she received two components of compensation. The first one was a "salary" divided into 24 pay periods that she received every period. The second component was additional pay for additional work – extractions; accomplishment, not hours.

Chakir swore that it was true that Research paid him a salary. He swore that he stayed at work until he completed his minimum tasks for the day, indicating that his salary is not dependent on hours worked. The other five plaintiffs testified similarly. They all knew that Research paid them a fixed salary and only if they did extra work would they get extra pay.

The pay stubs confirm the testimony. They show a fixed salary and a premium pay. The fixed salary portion does not change by hours worked to do the minimum number of extractions. No record and no plaintiff show a reduction of the base pay for anything.

The chemists' argument that they were hourly workers – despite testifying otherwise – seems to be rooted in their twisting of the company's method of calculating the pay for additional extractions. By dividing their yearly salary by 2080 – the total work hours in a year with a 40-hour workweek – Research used the resulting "hourly" value to calculate each chemist's rate of premium for extra extractions. For every additional extraction, Research paid the worker the same amount that he was paid for one extraction in his base pay – one-half of a day or four hours of his hourly value. This was the same rate as their base pay. The hours

---

[2] 29 C.F.R. § 541.300(a).

[3] 29 C.F.R. § 541.602(a).

worked per day or per extraction had no role in the pay. The premium rate was simply a set fee for additional accomplishment.

Research computed the premium using an imputed "hourly" value for ease of accounting, as it would for cost accounting. On their time sheets, the workers recorded "four hours" for each extra extraction. Their recording of "four hours" was not a reflection of time spent; it recorded an extraction done. A worker who is paid by the hour is being paid an hour's wages for an hour on the job. Being paid "two hours' wages" for one hour of actual time is not being paid by the hour. The latter is an accounting method called a piece rate – a value the employer assigns to a task. Chemists like Harrison could spend 13 hours at work and be paid for 28 accounting-value hours. As used by the company, "hours" meant units of value – not units of time. A unit of value derived from the time of a 40-hours-worked-per-week year does not convert the chemists to hourly workers.

Research paid the chemists by a salary, and their salaries exceeded $455 per week.

4.   *Reasonable Relationship.*

The chemists say that they cannot be "salaried professionals" because the law requires a "reasonable relationship" to exist between their fixed pay and the amount they earned. Section 604(b) of the Code of Federal Regulations says,

> An exempt employee's earnings may be computed on an *hourly, a daily or a shift basis*, without losing the exemption . . . if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned . . . .[4]

With its floors and floors of lawyers one would expect the Department of Labor to be able to write a regulation that is clear. Apparently, it cannot. The chemists say that because the compensation they typically received so far outweighed their guaranteed rate, their fixed pay was not reasonably related to their actual pay.

---

[4] 29 C.F.R. § 541.604(b) (emphasis added).

Some of Research's chemists chose not to do extra extractions. They received only their base salary and nothing more. They were paid the fixed part even if they worked fewer than 40 hours. The plaintiffs are among the group who chose to increase their earnings by completing more extractions.

The reasonable relationship requirement applies only when an employee's pay is computed on an hourly, daily, or shift basis. Research did not pay the chemists hourly, daily, or by shift. It paid them a salary – a fixed amount – every pay period. Nevertheless, even for doing extra work, Research paid them additional compensation by accomplishment – a set amount per additional extraction.

This regulation is for industries that customarily pay their employees by the hour, shift, or day even though they meet the duties of the learned exemption. In these industries if the employee does not work one week, he is paid the minimum guaranteed amount. If he does work, his earnings must at least equal the minimum. The workers are *not* paid by the hour, shift, or day *in addition to* the minimum; rather their hourly, shift, or day pay is substituted for the minimum. Nurses are an example; the hospital may pay them hourly with a guarantee of a fixed minimum regardless of the of hours worked. Because they work by the hour, the guaranteed minimum must be reasonably close the what they actually earn. An example of an unreasonable relationship is this: a guarantee of $455 per week – an implicit $12.50 per hour – when the nurses are paid $50 per hour. Section 604(b) is about minimum guarantees to hourly, shift, or day-rate workers; it is not directed toward salaried workers who may earn extra compensation.

Another regulation expressly permits Research's compensation plan.[5] Section 604(a) allows employers to pay workers additional compensation without losing their salaried exemption as long as the employee is guaranteed a set minimum. It allows additional compensation to be paid *on any basis.*

In this case, Research paid its chemists a salary and paid a premium based on accomplishment: the number of extra extractions the workers did. The regulation gives the example of a worker who is paid a base salary and earns a one-percent commission on the store's

---

[5] 29 C.F.R. § 541.604(a).

sales.[6] Functionally, the chemists are no different from the store manager. Both are salaried. Both earn extra pay. The store manager earns his by making the store a success as measured by its sales; the chemist earns his by completing additional extractions. For both, their additional compensation is tied to distinct, clearly-enunciated accomplishments. Week-in and week-out, each earns a fixed salary, but by supplemental exertions, each earns supplemental compensation that may double or triple his salary.

5.  *High Compensation.*

Harrison was an exempt professional; he was also exempt from the overtime requirements in 2007 and 2009 as a highly-compensated employee.[7] In 2007, he earned $104,380.52. From January 1, 2009, until his resignation that March, he earned $26,080.09 which annualizes to over $100,000 per year.

6.  *Damages.*

Even if the chemists were owed overtime wages, they cannot show that they worked uncompensated overtime. They admit they do not know how many hours they worked in any given week. They rely on their time sheets. These records reflect extractions at "four hours;" they do not show the hours they spent at work. The best they can do is speculate with vague, conclusory, and inconsistent claims. They cannot articulate facts from which a disinterested, fully-informed person could reach a "just and reasonable inference" about the hours that were worked.[8]

7.  *Conclusion.*

Because Research paid the chemists a salary and because it hired them to do a learned job, the plaintiffs did not earn overtime pay under the Fair Labor Standards Act. Their status is not affected by section 541.604(b). Harrison is further exempt in the years 2007 and 2009

---

[6]*Id.*

[7]29 C.F.R. § 541.601(a).

[8]*See Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

because he was a highly-compensated employee. Even if the chemists could have shown they were not exempt from overtime wages, they are unable to show how much they might be owed.

Rachid Chakir, David Graham, Christopher Harrison, Tanya Kalis, Charlene Reed, Albert Nguyen, and Ikenna Ofoma will take nothing from:

    (a) BA Research International, LP, and

    (b) BA Research International, LP, doing business as Cetero Research.

Signed on July 15, 2011, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge